# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* <br><br> Apple iPhone Cellular Phone IMEI# : #: 355181111175780 | Case No. **23mj1553** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:
See Attached Affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Scott James*
*Applicant's signature*

DEA TFO Scott James
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: April 28, 2023

*Judge's signature*

City and state: San Diego, CA                Hon. Michael S. Berg
                                             *Printed name and title*

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple iPhone Cellular Phone IMEI#: 355181111175780
    (**Target Device**)

The **Target Device** is currently in the possession of the Drug Enforcement Administration (DEA) located at 4560 Viewridge Ave, San Diego, California 92123.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, for the period of January 23, 2022, up to and including February 17, 2023:

    a.    tending to indicate efforts to possess with the intent to distribute controlled substances within the United States;
    b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of and/or the possession with the intent to distribute controlled substances within the United States;
    c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution of and/or the possession with intent to distribute of methamphetamine or other controlled substances within the United States;
    d.    tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute controlled substances within the United States, such as stash houses, residences used to prepare or process controlled substances, load houses, or delivery points;
    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or
    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of 21, U.S.C., §§ 841 and 846.

# AFFIDAVIT

I, Task Force Officer Scott James, being duly sworn, hereby state as follows:

## A.   INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Apple iPhone Cellular Phone IMEI# : #: 355181111175780
> (**Target Device**)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841(a)(1), 846, (Distribution of Controlled Substances and Conspiracy to do the same), as further described in Attachment B. The **Target Device** was used by Molley Kamara KOSSO Jr. and is currently in the custody of the Drug Enforcement Administration (DEA) located at 4560 Viewridge Ave, San Diego, California 92123.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## EXPERIENCE AND TRAINING

3. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

4. I am a San Diego Police Detective and have been so employed for over 22 years and I am assigned as a Task Force Officer of the Drug Enforcement Administration (DEA) and have been so assigned since December 2016. Currently, I am assigned to the San Diego Field Division (SDFD) Narcotic Task Force (NTF). Prior to my assignment to

1

DEA NTF, I was assigned to the Narcotics Unit at the San Diego Police Department for over 3 years.

5. During my law enforcement career, I have been tasked with the responsibility of investigating, arresting, and prosecuting Drug Trafficking Organizations (DTOs) that utilize the Southern District of California as an operational corridor. These investigations are often complex investigations which target high-level criminal smuggling organizations. I have been trained in investigating various violations of federal law to include narcotics trafficking, weapons trafficking, money laundering and bulk currency smuggling. I have worked with other law enforcement agencies with extensive experience in these investigations as well.

6. I am currently assigned to NTF Team 5, and have been so assigned since June 2019. As a DEA Task Force Officer, I have received training, conducted, and assisted in numerous federal and state drug investigations. I have debriefed numerous defendants, informants, and witnesses with personal knowledge regarding major drug trafficking organizations. Additionally, I have participated in many aspects of drug trafficking investigations, including undercover operations, conducting surveillance, and making arrests. Through these previous investigations, I have obtained knowledge regarding the ordinary meaning of controlled substance slang and jargon.

3. Based on my training and experience, I am familiar with how drug traffickers communicate and operate. For example, I am aware that drug traffickers frequently discuss criminal activity using cellular telephones and often use coded language to obscure conversations about their unlawful activity, because they believe coded language makes it more difficult to identify their conduct. I also know that drug traffickers change telephones as a means to evade detection by law enforcement. Moreover, I know that drug traffickers obtain telephones from third parties and or subscribe to them in fictitious names to mask the true identity of the individuals using the telephones. I am also familiar with the typical makeup and operation of gangs and drug trafficking organizations, including the

distribution, storage, and transportation of the drugs, the collection of money that represents the proceeds of drug trafficking, the subsequent movement and distribution of proceeds, and other criminal activity. Based upon my training and experience and consultations with law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.    Narcotics traffickers will use cellular telephones because they are mobile, and they have instant access to telephone calls, text, web, and voice messages;

    b.    Narcotics traffickers will use cellular telephones because they can actively monitor the progress of their illegal cargo while the conveyance is in transit;

    b.    Narcotics traffickers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d.    Narcotics traffickers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e.    Narcotics traffickers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

    f.    The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

4.    Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a trafficker's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

5.    Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substances trafficking, and all the facts and opinions set

forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the trafficking of controlled substances may yield evidence:

    a.    tending to indicate efforts to distribute controlled substances;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of controlled substances;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution of controlled substances;

    d.    tending to identify travel to or presence at locations involved in the distribution of controlled substances, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications.

6.    In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics trafficking investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

    **B.**    **FACTS SUPPORTING PROBABLE CAUSE**

7.    On July 20, 2021, investigators in Columbus, Georgia contacted investigators from the San Diego Field Division (SDFD) Narcotic Task Force (NTF) Team 5 regarding the drug trafficking activities of a San Diego-based drug trafficking organization that they believed to be involved in shipping methamphetamine, cocaine, and marijuana to the

Columbus, Georgia area and surrounding cities primarily through the United States Postal Service (USPS). Based on this and other information, NTF Team 5 coordinated with a USPS Postal Inspector (PI) and began to investigate Daniel Tesfaye WOLDEMICHAEL, Molley Kamara KOSSO, Jr. (KOSSO), and others.

*December 17, 2021: Investigators identify KOSSO during a vehicle stop.*

8. On December 8, 2021, investigators from NTF Team 5 began monitoring the movements of a 2014 Acura bearing California license plate # 8EGH774 (the Acura). According to the California Department of Motor Vehicles (DMV), this license plate is assigned to Tesfaye Woldemichael (WOLDEMICHAEL's father) and Daniel WOLDEMICHAEL, at 4329 Kansas Street, San Diego, California.[1] At approximately 2:05 p.m., investigators observed the Acura make a brief stop at the US Post Office located at 3911 Cleveland Avenue, San Diego, California. Investigators coordinated with the PI for assistance. Shortly thereafter, investigators and the PI arrived at this location, where they obtained video footage depicting WOLDEMICHAEL walking in and handing a postal clerk a large white rectangular parcel (subject parcel). Investigators then located and seized the subject parcel. On December 22, 2021, a search warrant was executed on the subject parcel, which resulted in the seizure of approximately 3.58 kilograms of a white powdery substance that subsequent lab results revealed to be cocaine.

9. On December 17, 2021, at approximately 9:16 a.m., investigators received an alert from the electronic GPS tracker and began monitoring the electronic movement of the Acura. At approximately 9:45 a.m., investigators noticed that the Acura was northbound on the Interstate 5 (I-5) heading towards Oceanside, CA. At approximately 12:07 p.m., the Acura stopped at Joes Auto Parks located at 640 S. Spring St., Los Angeles, CA. At approximately 12:19 p.m., just over ten minutes after arriving at its destination in Los Angeles, the Acura left the parking lot, and investigators continued monitored the electronic

---

[1] During surveillance, on November 17, 2021, investigators had observed WOLDEMICHAEL driving the Acura. Investigators identified the driver of the Acura as WOLDEMICHAEL through a review of information from a California Department of Motor Vehicles database and a review of open-source social media accounts.

5

movement of the Acura as it began to drive back towards San Diego, CA. Based on the investigation and the fact that the Acura drove from San Diego to Los Angeles, only stopping in Los Angeles for little more than ten minutes before heading back to San Diego, investigators believed that the Acura drove to Los Angeles for the purpose of engaging in nefarious activity.

10.     At approximately 12:32 pm, investigators contacted Oceanside Police Department (OPD) detectives, provided information on the Acura, and requested assistance with surveillance. At approximately 2:18 p.m., Oceanside Police conducted a traffic stop on the Acura at the Mobil Gas Station located at 477 Harbor Dr, Oceanside, CA.[2]

11.     During the vehicle stop, OPD officers identified the driver of the Acura as KOSSO. Also, during the vehicle stop, KOSSO voluntarily told officers that he was in possession of a loaded Glock 19. Officers located the gun in the center console of the vehicle and conducted a further search of the vehicle for additional weapons. During the search, KOSSO stated that there was approximately $20,000 dollars in a box in the back seat. OPD officers located an open USPS box containing cash that appeared to be separated into $1,000-dollar increments. OPD officers noted in a report that the money was sealed in plastic and marked with a "D" on top. KOSSO offered no explanation for the origin of the money or his activities that day. Officers cited KOSSO for PC 25400 (a)(1)—Carrying a Loaded Firearm in Vehicle. Officers seized the Glock 19 and bulk cash. KOSSO was then released on scene.

*January 12, 2022: KOSSO delivers drug-laden parcels to the Post Office.*

12.     On January 12, 2022, at approximately 4:20 p.m., investigators established surveillance near WOLDEMICHAEL's and KOSSO's apartment located at 2196 Fenton Parkway, Apt. 104, San Diego, California. At 4:28 p.m., Investigators observed KOSSO walking from the apartment to the nearby parking lot. Investigators took a photograph of

---

[2] The vehicle was stopped based on an illegal window tint in violation of CA Vehicle Code 26708(a)(1).

6

KOSSO and noted that he was wearing a gray sweatshirt with dark-colored pants. Investigators observed KOSSO enter the Acura and drive out of the parking lot.

13. At approximately 4:40 p.m., investigators observed the Acura return to the apartment complex on Fenton Parkway and park near the door to Apartment 104. An investigator conducting surveillance walked towards the location of the Acura, where he observed WOLDMICHAEL, KOSSO, and an unidentified male adult (UMA) standing near the rear of the Acura. The investigator then observed WOLDEMICHAEL place a large cardboard box inside the Acura. The investigator also saw that another box was already inside the Acura.

14. Investigators then waited for the Acura to exit the apartment parking lot. Investigators followed the Acura to the Westfield Mission Valley Mall, located at 1640 Camino Del Rio N., San Diego, California. At approximately 4:51 p.m., investigators observed the Acura park near a US Post Office located inside the Westfield Mission Valley Mall at Suite 202. Investigators then coordinated with the PI for assistance.

15. At approximately 5:02 p.m., investigators arrived at the post office and noticed that the Acura had already departed the parking lot. With the help of the PI and postal clerks, investigators obtained video footage from the Post Office, which depicted KOSSO and the UMA placing three subject parcels on the front counter. Investigators located and seized all subject parcels.

16. A search warrant was obtained and executed on all subject parcels, which resulted in the seizure of approximately 1.158 kilograms of a white powdery substance that subsequent lab results revealed to be cocaine, and approximately 26.813 kilograms of a crystalline substance. Subsequent lab results confirmed that the additional parcels contained approximately 3.2 kilograms of methamphetamine and 23.541 kilograms of methamphetamine, respectively.

*January 12, 2022: Investigators conduct a vehicle stop of KOSSO.*

17. On January 12, 2022, TFO James received state judicial approval to place a GPS tracker on a 2014 Mercedes (the Mercedes). On January 20, 2022, members of NTF 5

established surveillance on KOSSO based on the electronic movement of the GPS tracker on the Mercedes. At approximately 10:50 a.m., investigators arrived at 2196 Fenton Pkwy, San Diego, CA (hereinafter "L1"), the apartment complex where WOLDEMICHAEL and KOSSO have been observed at several times on surveillance leaving with drug filled parcels.

18. At approximately 11:30 a.m., based on the electronic monitoring of the GPS tracker on the Mercedes, investigators arrived at a shopping center located at 1333 Camino Del Rio, San Diego, CA to establish surveillance on the Mercedes. Investigators observed the Mercedes parked in front of the 5.11 Store adjacent to an Enterprise Rental Car located at Suite #101.

19. At approximately 11:43 a.m., investigators noticed KOSSO in the driver's seat of a white Dodge Caravan bearing Ohio license plate number JAB6201 (the Caravan). SA Ambrose observed that KOSSO had the driver's side door open and was speaking with an employee of Enterprise Rental Car business who was holding a clipboard. KOSSO was identified through his CA DMV Driver's License photograph.

20. At approximately 11:45 a.m., investigators observed KOSSO exit the driver's side of the Caravan, walk over to and enter the Mercedes, and drive around the parking lot. The Mercedes then parked closer to the Caravan. Investigators observed a female, later identified as Michelle D. Hill driving the Mercedes. At this location, KOSSO exited the Mercedes, entered the Caravan, and both vehicles then exited the parking lot.

21. Investigators followed both vehicles as they drove to L1. At approximately 11:52 a.m., investigators observed both vehicles arrive in the parking lot near L1. At approximately 11:55 a.m., investigators observed KOSSO and Hill retrieve a duffel bag and a pink suitcase from the trunk of Mercedes and place them in the rear of the Caravan.

22. At approximately 11:56 a.m., investigators saw both KOSSO and Hill in the Caravan and driving towards the exit of L1. Investigators followed the Caravan to a Sky Fuel located at 6011 Mission Gorge Rd., San Diego, California, where they observed KOSSO walking back and forth from the Caravan to the business while talking on his

phone. At approximately 12:17 p.m., the Caravan left the gas station, continued north on Mission Gorge Road, and pulled into a parking lot located at 6171 Mission Gorge Rd., San Diego, CA. The Caravan parked at this location and KOSSO immediately exited the vehicle. Investigators then pulled into the parking lot and conducted a vehicle stop of the Caravan.

23. Investigators asked KOSSO where he was coming from and where he was going. KOSSO responded that he had just picked up a rental car and was going to a party in Arizona with his girl (Hill). Investigators asked KOSSO if he had anything in the Caravan that was illegal, such as drugs, guns, or large amounts of currency. KOSSO stated that he did not have anything illegal in the vehicle. Investigators then asked KOSSO for consent to search the Caravan, and KOSSO agreed. Investigators conducted a search of the Caravan to include the duffle bag and suitcase with negative results. At approximately 12:45 p.m., KOSSO and Hill were released on scene.

*August 1, 2022: Investigators arrest KOSSO's co-defendants.*

24. On August 1, 2022, investigators executed two federal search warrants on locations associated to Daniel WOLDEMICHAEL (22MJ02773 for 2930 Barnard Street #11102 San Diego, California and #22MJ02774 for 601 11th Street, #309 San Diego, California). Before service at the 601 11th Street location, investigators observed WOLDEMICHAEL exit the building carrying a gray plastic bag, later determined to contain one kilogram of cocaine, and walk towards the location of a white Honda previously identified as being driven by WOLDEMICHAEL. An investigator wearing clothing that clearly identified him as law enforcement exited his vehicle, approached WOLDEMICHAEL, and identified himself as police. As the investigator approached WOLDEMICHAEL, he (WOLDEMICHAEL) tossed the gray plastic bag aside and attempted to flee by running across several lanes of traffic before ultimately being arrested.

25. During service of the federal search warrant at 601 11th Street, #309, San Diego, California, investigators seized approximately three more kilograms of cocaine, 20 pounds of methamphetamine, six pounds of marijuana, and a CZ 9mm handgun.

26. On March 16, 2022, investigators viewed a government database and learned that KOSSO had fled the jurisdiction and was residing somewhere in the Detroit, Michigan area.

27. On August 3, 2022, KOSSO was indicted along with his co-conspirators for their commission of the Target Offenses. KOSSO was delegated to the U.S. Marshals Service as a fugitive.

*February 17, 2023: Investigators arrest KOSSO and seize the **Target Device** in Detroit, Michigan.*

28. On February 17, 2023, using a judicially authorized ping on the **Target Device**, investigators located and arrested KOSSO per the federal arrest warrant in Detroit, Michigan, and seized the **Target Device**. The target device is currently being held at the San Diego DEA Office located at 4560 Viewridge Ave, San Diego, California 92123.

29. Based upon my experience and training, consultation with other law enforcement officers experienced in controlled substances trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that KOSSO was using the **Target Device** to communicate with known and unknown co-conspirators, and others, to further the transportation and distribution of illicit controlled substances within the United States. Further, in my training and experience, controlled substances traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the controlled substances. Based on my training and experience, it is also not unusual for individuals, such as KOSSO, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks, months, or years longer than they claim. Accordingly, I request permission to search

the **Target Device** and seize the items listed in Attachment B from the investigation period of January 12, 2022, when KOSSO delivered the parcels to the post office, up to and including February 17, 2023.

### C. SEARCH METHODOLOGY

*Procedures for Electronically Stored Information*

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and

its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### D.  PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//

//

//

//

//

//

//

//

//

//

//

//

//

### E.  CONCLUSION

23. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of KOSSO's violations of Title 21, United States Code, Sections 841(a)(1) and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Scott James*
_____
Task Force Officer Scott James
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this  28th  day of April 2023.

_____
HONORABLE MICHAEL S. BERG
UNITED STATES MAGISTRATE JUDGE

13